UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

[1] EDWIN CARPIO-VÉLEZ,
[2] KELLEY MALA, and
[3] OSCAR MADE-ZABALA,

    Defendants.

CRIMINAL No. 21-379 (ADC)

**REPORT AND RECOMMENDATION**

Pending before the court are motions to dismiss the indictment filed by defendants Edwin Carpio-Vélez, Kelley Mala, and Oscar Made-Zabala. ECF Nos. 87, 88, 105. The United States has filed a response in opposition to the motions to dismiss and the defendants have in turn filed replies to the government's response. ECF Nos. 89, 91, 92.

All three defendants have been charged with money laundering offenses, either in the modality of conspiracy or concealment. The gist of the argument raised by the defendants is that mere payment for drugs does not constitute money laundering and that as drafted, the indictment describes payments for drugs, or conspiracies or attempts to do so, not money laundering. In support of their argument, the defendants rely primarily on two cases: *U.S. v. Harris*, 666 F.3d 905 (5th Cir. 2012) and *United States v. Dimeck,* 24 F.3d 1239 (10th Cir. 1994). In *Harris*, the Court of Appeals for the Fifth Circuit held that "funds do not become the proceeds of drug trafficking until a sale of drugs is completed. Hence, a transaction to pay for illegal drugs is not money laundering, because the funds involved are not proceeds of an unlawful activity when the transaction occurs, but become so only after the transaction is completed." *U.S. v. Harris*, 666 F.3d

905, 908 (5th Cir. 2012) (citing *United States v. Gaytan*, 74 F.3d 545 (5th Cir. 1996), discussing *United States v. Puig-Infante*, 19 F.3d 929, 938 (5th Cir. 1994)). In *Dimeck*, the Court of Appeals for the Tenth Circuit held that "mere delivery of alleged drug-money by one courier to a second courier, who was to deliver the money to the seller of the drugs, does not constitute money laundering under § 1956(a)(1)(B)(i)." *United States v. Dimeck,* 24 F.3d 1239, 1241 (10th Cir. 1994).[1]

It is well established that money laundering is a "separate crime distinct from the underlying offense that generated the money." *United States v. LeBlanc*, 24 F.3d 340, 346 (1st Cir. 1994). Thus, the statutes that encompass the money laundering offenses "interdict only the financial transactions …, not the anterior criminal conduct that yielded the funds allegedly laundered." *United States v. Cabrales*, 524 U.S. 1, 7 (1998). It is also undisputed that "the laundering of funds cannot occur in the same transaction through which those funds first became tainted by crime." *United States v. Butler*, 211 F.3d 826, 830 (4th Cir. 2000).

Now, at the heart of the controversy between the parties is at what moment does money become proceeds for money laundering purposes. Defendants urge the court to follow the *Harris* decision from the Fifth Circuit and adopt the view that funds become proceeds of an unlawful activity only after the underlying transaction has been completed. The Court of Appeals for the First Circuit, however, has taken a more nuanced position on this issue: "Although 18 U.S.C. § 1957 does not define when money becomes 'proceeds,' the Third and Fourth Circuits have held that 'proceeds are derived from an already completed offense, *or a completed phase of an ongoing*

---

[1] The Tenth Circuit has elaborated as well on legislative intent: "Congress aimed the crime of money laundering at conduct that follows in time the underlying crime rather than to afford an alternative means of punishing the prior 'specified unlawful activity.' Congress enacted the money laundering statute to provide a punishment in addition to other punishment rather than instead of other punishment. We find that Congress intended money laundering and the 'specified unlawful activity' to be separate offenses separately punishable." *United States v. Edgmon*, 952 F.2d 1206, 1214 (10th Cir. 1991).

2

*offense.*" *United States v. Richard*, 234 F.3d 763, 770 (1st Cir. 2000) (emphasis in original). Therefore, "[i]t is not a requirement that the underlying crime must be fully completed before any money laundering can begin… '[T]he predicate offenses must produce proceeds before anyone can launder those proceeds,' but that does not require the two crimes involved to be entirely separate in time. 'Proceeds' of an illegal activity may be created before the completion of an underlying on-going crime." *United States v. Castellini*, 392, F.3d 35, 48 (1st Cir. 2004).[2] *See also United States v. Misla-Aldarondo*, 478 F.3d 52, 68 (1st Cir. 2007) (holding that the fact that the defendant "attempted to conceal the source of the money *before* it actually came into his possession cannot relieve him of criminal liability for money laundering.")

Turning now to the decision from the Tenth Circuit in *Dimeck*, said case does not stand for the proposition that couriers can never be convicted of money laundering. What the *Dimeck* court concluded was that the evidence introduced at trial had failed to show that the couriers were used "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). *See Dimeck*, 24 F.3d at 1246. Furthermore, there is precedent of couriers convicted of money laundering; hence it is evident that being a courier in and of itself is not a shield against money laundering prosecutions. *E.g.*, *U.S. v. Cedeño-Pérez*, 579 F.3d 54, 58 (1st Cir. 2009) (courier's conviction affirmed where the sole issue on appeal was whether the evidence adduced at trial was sufficient to prove that the defendant possessed the mental state required for a conviction of conspiracy to commit money

---

[2] Defendants contend that *Castellini* is inapposite because the elements of the underlying offense, namely bankruptcy fraud, are different from those for drug trafficking. ECF No. 91, at 4. *Castellini*, however, is not being cited to suggest that the elements of the underlying offenses are the same, but rather for the proposition that there could be some overlap in time when the predicate offense and the money laundering offense take place. Similarly, defendants argue that *U.S. v. Richard*, 234 F.3d 763 (1st Cir. 2000) is distinguishable from the case at bar because the elements of bankruptcy fraud, the underlying offense, are different from those for drug trafficking. However, *Richard* has been cited in support of the notion that proceeds can be derived not only from a completed offense, but also from a completed phase of an ongoing offense. *Richard* also addresses a question which is not the issue at hand, namely whether a conviction pursuant to 18 U.S.C. § 1957(a) requires proof that the defendant committed the specified predicate offense or merely that the monetary transaction constitutes proceeds of a predicate offense.

3

laundering). In the end, it will depend on whether the courier took any steps to conceal and disguise the nature, location, source, ownership or control of the illegal proceeds.[3]

Having addressed the substantive legal arguments, the proper framework under which the motions to dismiss at bar are to be evaluated must be kept in perspective.

> An indictment must allege each of the required elements of … [the offense charged], but the government need not put forth specific evidence to survive a motion to dismiss. *[United States v. Stewart,* 744 F.3d 17, 21 (1st Cir. 2014)] (citing Fed.R.Crim.P. 7(c)(1)). When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that "the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *United States v. Savarese,* 686 F.3d 1, 7 (1st Cir. 2012). Indeed, "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011).

*United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015).

Both *Harris* and *Dimeck*, the cases upon which Edwin Carpio-Vélez, Kelley Mala, and Oscar Made-Zabala rest their arguments, do not examine a lower court's ruling on a pretrial motion such as a motion to dismiss an indictment. *Harris* and *Dimeck* involved appellate review for claims of insufficiency of evidence and of district court denials of motions for judgment of acquittal after jury trials were held. In the motions to dismiss the indictment presently pending before this court, however, it is not the sufficiency of the evidence what is under scrutiny, but rather the sufficiency of the allegations in the indictment.

Count one of the indictment, which charges a violation of 18 U.S.C. § 1956(h), alleges, *inter alia*, that

> Beginning in or about 2018, and continuing through the return of this Indictment … within the District of Puerto Rico and elsewhere, … the defendants [1] Edwin Carpio-Vélez, [2] Kelley Mala, and [3] Oscar Made-Zabala, knowingly conspired and agreed with each other, and with other persons … to violate 18 U.S.C. § 1956, including by knowingly conducting and attempting to conduct financial

---

[3] "[T]he delivery of the cash proceeds of unlawful activity to another person qualifies as a 'financial transaction' within the meaning of the money laundering statute." *United States v. Matthews*, 31 F.4th 436, 447 (6th Cir. 2022).

> transactions affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

ECF No. 12.

> Count two charges, *inter alia*, that
>
> On or about January 23, 2018, within the District of Puerto Rico and elsewhere … defendants [1] Edwin Carpio-Vélez and [2] Kelley Mala, aiding and abetting each other, knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce involving approximately $80,000 in United States currency, which transaction involved the proceeds of specified unlawful activity, that is the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing the property involved in the financial transaction represented the proceeds of some form of unlawful activity and knowing the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity. All in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2.

*Id.*

> Count three charges, *inter alia*, that
>
> On or about February 21, 2018, within the District of Puerto Rico and elsewhere … defendant [1] Edwin Carpio-Vélez knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce involving approximately $64,940 in United States currency, which transaction involved the proceeds of specified unlawful activity, that is the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing the property involved in the financial transaction represented the proceeds of some form of unlawful activity and knowing the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity. All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

*Id.*

> Count four charges, *inter alia*, that
>
> On or about November 26, 2018, within the District of Puerto Rico and elsewhere … defendant [3] Oscar Made-Zabala knowingly conducted and attempted to

5

conduct a financial transaction affecting interstate and foreign commerce involving approximately $199,920 in United States currency, which transaction involved the proceeds of specified unlawful activity, that is the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing the property involved in the financial transaction represented the proceeds of some form of unlawful activity and knowing the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity. All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

*Id.*

Defendants raise various arguments regarding the wording of the indictment. One of those arguments is that there is no allegation that they were drug traffickers and that the extent of their alleged involvement is that of mere couriers in payments for drugs. However, an indictment does not have to allege that a defendant is a drug trafficker to accuse him of laundering funds that constitute drug proceeds. As stated above, money laundering statutes "interdict only the financial transactions …, not the anterior criminal conduct that yielded the funds allegedly laundered." *United States v. Cabrales*, 524 U.S. 1, 7 (1998). Moreover, the indictment does not portray the defendants as mere couriers. All four counts charge that the defendants knew that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity. Count one contains additional allegations regarding some of the efforts to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, like for example the use of codes, matching serial numbers of dollar bills, duffel bags, money brokers, financial institutions, business and individual accounts.

Another argument raised by the defendants regarding the factual allegations of the indictment is that "the allegations that the funds were proceeds of drug trafficking, which would eventually be returned to the drug traffickers as payment for drugs, reinforces the grounds for dismissal since the money laundering offenses did not occur until said traffickers received the

payment for drugs." ECF No. 87, at 2. A paraphrasis of this same argument resurfaces in their reply to the government's opposition to the motion to dismiss: "It is clear that the indictment alleges that the funds came from dealing in controlled substances and they were meant to be delivered to their owners. That is the equivalent of alleging that the proceeds were obtained from the sale of narcotics and the delivery to the 'owners' was to pay the owners for their drugs." ECF No. 91, at 2. Nevertheless, as previously explained, "[i]t is not a requirement that the underlying crime must be fully completed before any money laundering can begin… 'Proceeds' of an illegal activity may be created before the completion of an underlying on-going crime." *United States v. Castellini*, 392, F.3d 35, 48 (1st Cir. 2004).

WHEREFORE, defendants' arguments that the indictment is legally deficient are unpersuasive. For the reasons expounded above, the motions to dismiss the indictment filed by Edwin Carpio-Vélez, Kelley Mala, and Oscar Made-Zabala should be DENIED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to object within the specified time waives the right to appeal this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); *see also* 28 U.S.C. § 636(b)(1); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir. 1994); *United States v. Valencia*, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 1st day of April, 2023.

s/Marcos E. López  
U.S. Magistrate Judge