THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

[1] EDWIN CARPIO-VELEZ,
[2] KELLEY MALA, and
[3] OSCAR MADE-ZABALA,

Defendants.

Crim. No. 21-379 (ADC)

## OPINION AND ORDER

Edwin Carpio-Vélez, Kelley Mala, and Oscar Made-Zabala (jointly, "defendants") moved to dismiss the indictment. **ECF Nos. 87, 88, 105**. Pending before the Court are the U.S. Magistrate Judge Marcos E. López's ("Magistrate Judge") Report and Recommendation (R&R"), **ECF No. 112**, and defendants' objections thereto. **ECF Nos. 113, 117, 122**.

I.  **Procedural background**

Defendants were charged in a four-count Indictment ("indictment"). Specifically, all three defendants were charged with money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count One). In addition, co-defendants Edwin Carpio-Vélez and Kelley Mala were charged with substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Two and Three).[1] Co-defendant Oscar Made-Zabala was also charged with concealment of money laundering (Count Four) in violation of 18 U.S.C. § 1956(a)(1)(B)(i). **ECF No. 12**.

---

[1] Only co-defendant Edwin Carpio-Vélez is charged in Count Three.

On July 15, 2022, Edwin Carpio-Vélez and Kelley Mala separately moved the dismiss the indictment. **ECF Nos. 87, 88**.[2] The government opposed. **ECF No. 89**. Edwin Carpio-Vélez and Kelley Mala replied. **ECF Nos. 91, 92**. Several months later, on November 15, 2022, Oscar Made-Zabala moved for joinder on his other co-defendants' motions to dismiss. **ECF No. 105**.

On February 24, 2023, the Court referred the motions to dismiss to the Magistrate Judge for the issuance of a R&R. **ECF No. 110**. On April 1, 2023, the Magistrate Judge entered the R&R. **ECF No. 112**. Accordingly, objections to the R&R were due by April 17, 2023. *See* **ECF No. 112**; Fed. R. Civ. P. 72(b)(2); L. Civ. R. 72(d); 28 U.S.C. § 636(b)(1).

On April 11, 2023, co-defendants Edwin Carpio-Vélez and Kelley Mala logged their objections to the R&R. **ECF No. 113**. Without seeking leave of Court, a couple of days later they filed a supplement brief (2 pages long) only to add block quotes from an out-of-circuit opinion. **ECF No. 117**. A month later, without seeking leave or an extension of time to do so,[3] co-defendant Oscar Made-Zabala filed a motion for joinder on the objections filed by his co-defendants. **ECF No. 122**.

## II.   Legal standard

Magistrate judges are granted authority to make recommendations on pretrial matters dispositive of a claim or defense, while the ultimate resolution of dispositive motions remains

---

[2] Notably, without diminishing the value of a short and concise filing, co-defendant Edwin Carpio-Vélez's filing is three pages long and includes only one out-of-circuit case in support. **ECF No. 88.** Co-defendant Kelley Mala's filing is also three pages in length and contains block quotes from two out-of-circuit cases. **ECF No. 87**.

[3] In an attempt to excuse the delayed filing, counsel stated, without more, that he was "immerse[d] in the litigation of a criminal trial… [16-0547] (FAB)." **ECF No. 122**.

at the discretion of the presiding judge. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a), (b)(1); *accord* L. Civ. R. 72(a)(7)-(9). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. Fed. R. Civ. P. 72(b). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673 (1980)). "The district court need not consider frivolous, conclusive, or general objections." *Rivera-García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir. 1987)). However, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(b)(1); *see also Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharma., Inc.,* 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The court may accept those parts of the report and recommendation to which the party does not object. *See Hernández-Mejías v. General Elec.,* 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility,* 334 F. Supp. 2d 114, 125-26 (D.R.I. 2004)).

III.   Discussion

    A.   **Defendants' arguments to dismiss the indictment.**

Defendants move to dismiss the indictment on a very specific ground: that "[t]here is no allegation that [they] were drug traffickers." **ECF No. 87** at 1; *see* **ECF No. 88** at 2 ("[t]here is no

allegation… that codefendant… was a drug dealer."). Conversely, according to them, the indictment only alleges that defendants "as couriers[,] transferred to another courier cash in payment for drugs who in turn deposited the money in bank accounts to be transferred as payment to the suppliers." *Id*., 1-2; *see* **ECF No. 88** at 2 ("[t]he [i]ndictment describes codefendant… as a courier transferring bulk U.S. currency to another courier."). Finally, in their view, given the lacking allegations and evidence of drug dealings, "payment for drugs does not constitute money laundering." *Id*., at 2; **88** at 2. Based on that theory, they move to dismiss the indictment.[4]

Although the cases they cite as authority deal exclusively with the sufficiency of the evidence, in response to the government's brief defendants concede that their challenge is one against the indictment but fail to explain how the holding in the cited cases apply to the case at hand. **ECF Nos. 91** at 1; **92** at 1-2. They also tried to "distinguish" the cases cited in the government's response by simply claiming that the predicate offenses (not the money laundering per se) were not drug trafficking or, in the alternative, that the defendants in those cases did not have the same role as co-defendants in this case. **ECF No. 91** at 3-4.

B.     The Report & Recommendation ("R&R").

The R&R efficiently recommends the rejection of defendant's arguments for dismissal. The Magistrate Judge starts by pointing out that defendants' arguments rely on two out-of-

---

[4] The Court is unable to elaborate on defendants' arguments any further because, as explained before, their briefs do not exceed a couple of paragraphs and, even then, they are`, for the most part, block quotes from out-of-circuit cases.

circuit cases, *United States v. Harris*, 666 F.3d 905 (5th Cir. 2012) and *United States v. Dimeck*, 24 F.3d 1239 (10th Cir. 1994). **ECF No. 112**.

Notwithstanding, the Magistrate Judge correctly indicated that the First Circuit has adopted a "more nuanced position of this issue." **ECF No. 112** at 2. The R&R also explains that defendants' attempt to dismiss the case based on purported deficiencies in the indictment triggers a standard different from the one under which their arguments hinge (i.e. sufficiency of the evidence). *Id.*, at 6-7.

Finally, the Magistrate Judge evaluated the indictment and held that it complies with Fed. R. Crim. P. 7(c)(1) and First Circuit caselaw. Accordingly, the Magistrate Judge recommends that the Court deny co-defendants' motions to dismiss the indictment. *Id.*, at 7.

**C.    The objections.**

Co-defendants Edwin Carpio-Vélez and Kelley Mala filed a timely objection to the R&R basically rehashing the arguments included in their motion to dismiss. They argue that their out-of-circuit caselaw should control and that the Magistrate Judge erred. A week later, after the statutory period for filing objections elapsed, they filed a motion requesting that the Court consider yet another out-of-circuit case. **ECF No. 117**.

Roughly a month after, co-defendant Oscar Made-Zabala filed a motion for joinder on co-defendants objections. **ECF No. 122**. This request falls by the wayside. Aside from it being untimely, which unexcused delay suffices to deny it, co-defendant Oscar Made-Zabala failed to realize that, except for Count One, he is not charged in all counts with the exact same offense or

conduct as his fellow co-defendants. **ECF No. 12**. Difference which, on its own, warrants denial of Oscar Made-Zabala's joinder. But even if the Court allowed him to join, the objections are meritless, too.

### D. First Circuit legal precedent vis-á-vis defendants' contentions.

Defendants' whole challenge centers on the erroneous notion that other Circuits have held that the proceeds of drug sale are not "proceeds" for laundering purposes until all drug related activities end and that carrying out transactions with such drug money is not actionable under money laundering criminal statutes. These premises have many flaws.[5]

These over-generalized holdings are inapposite to First Circuit precedent. Recognizing that 18 U.S.C. § 1957 does not define the precise moment when money becomes proceeds, the First Circuit took note that "the Third and Fourth Circuits have held that proceeds are derived from an already completed offense, or *a completed phase* of an *ongoing* offense." *U.S. v. Richard*, 234 F.3d 763, 770 (1st Cir. 2000)(quoting *United States v. Conley*, 37 F.3d 970, 980 (3rd Cir. 1994) (emphasis modified and internal quotation marks omitted)). Thus, as the Magistrate Judge correctly pointed out, in *United States v. Castellini*, 392 F.3d 35, 48 (1st Cir. 2004) the Court of Appeals expounded: "predicate offenses must produce proceeds before anyone can launder those proceeds, but that does not require the two crimes involved to be entirely separate in time." *Id.*, (quoting *United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998)).

---

[5] Among others, as discussed in more detail in the next sections, this argument stems from a tortured reading of the other Circuits' cases.

Thus, unlike what defendants generally propose, in our Circuit "[p]roceeds of an illegal activity may be created before the completion of an underlying on-going crime." *United Sates v. Castellini*, 392 F.3d at 48. In drawing that line, the First Circuit noted that, although not the only accepted predicate offense, "money launder[ing] case[s] involv[ing] [] drug traffick[ing]" were the "the classic" 18 U.S.C. § 1957 case. *Id*. (internal quotations marks omitted).[6] Due to the wide array of potential predicate offenses, the moment in which assets become "proceeds" for money laundering purposes may vary depending on the predicate offense. *See id*. (discussing that "proceeds of bankruptcy fraud were created as of the time Castellini accepted the checks… bank and wire fraud, usually create proceeds only on execution of the first scheme, while mail fraud can create proceeds before a mailing takes place")(internal quotation marks omitted)).

Moreover, the Magistrate Judge correctly noted that there is First Circuit precedent affirming a drug trafficking related money laundering conviction of a defendant that acted as a "courier." *U.S. v. Cedeño-Pérez*, 579 F.3d 54, 58 (1st Cir. 2009) (courier's conviction affirmed where the sole issue on appeal was whether the evidence was sufficient to prove that he knew the money came from some unlawful activity).

Thus, pursuant to First Circuit caselaw, the fact that defendants acted as "couriers" does not place them out of the scope of the money laundering statutes, nor does the fact that the drug

---

[6] This conclusion cuts against defendants' argument that First Circuit precedent was distinguishable because the predicate offenses were not related to drug trafficking.

trafficking scheme was arguably ongoing preclude the money from turning into "proceeds" for money laundering purposes.

### E.      The authority cited by defendants fails to carry the day.

As discussed before, the gist of defendants' objections is that "Edwin Carpio V[é]lez and Kelley Mala *were just transferring* the cash proceeds from allegedly an illegal drug operation to another person following the instructions received from their boss." **ECF No. 113** at 2 (emphasis added). According to them, they did not know "what the other person would do with" the money.[7] *Id*., at 3. Thus, they claim that they cannot be tried for money laundry as charged in the indictment.

In support, defendants once again make reference to *U.S. v. Harris*, 666 F.3d at 908 and *United States v. Dimeck*, 24 F.3d at 1241. **ECF No. 113** at 3-4. However, even if the Court accepted defendants' argument at face value (that is, ignoring First Circuit caselaw) these cases are neither controlling nor persuasive.

In *Dimeck* the Tenth Circuit reversed a money laundering conspiracy conviction based on facts that are not similar to ones alleged in the indictment in this case. Indeed, according to the Tenth Circuit, a drug seller shipped marijuana to Detroit. In order to receive the money in California, the seller reached out to a person (a "courier") to pick up the money in Detroit and

---

[7] The Court finds it improper (to say the least) that defendants offer purported "facts" as the basis for their indictment challenge when such "facts" are not within the four corners of the indictment. The impropriety of this proffer heightens in light of the fact that the proffered "fact" goes to defendants' state of mind, which would otherwise require defendants take the witness stand during trial. Accordingly, the Court will disregard unsubstantiated claims by defendants that go beyond the facts alleged in the indictment.

travel with it to back to California. Once in Detroit, the courier met Dimeck who "delivered" the money to him at a motel. The courier then intended[8] to travel to California with the money. Under these facts, the Tenth Circuit agreed with the defendant that "mere delivery of alleged drug-money by one courier to a second courier… does not constitute money laundering under § 1956(a)(1)(B)(i)." *United States v. Dimeck*, 24 F.3d at 1241. Importantly, the *Dimeck* Court clarified that in that case the seller or owner "wanted to receive the illegal proceeds as illegal funds." *Id.*, 24 F.3d at 1246. In other words, unlike the case at bar, there was no agreement or discussion about laundering the money before it reached the hands of the seller.

Likewise, in *U.S. v. Harris*, the Fifth Circuit reversed a money laundering conviction by reasoning that "a transaction to pay for illegal drugs is not money laundering, because the funds involved are not proceeds… but become so only after the transaction is completed." *U.S. v. Harris*, 666 F.3d 905, 910 (5th Cir. 2012). Similar to the underlying facts in the Tenth Circuit's *Dimeck* case, "Harris supplied Miller and others with drugs and Miller and others sent payments in various forms back to Harris." *Id.*, at 910.[9] Much like in *Dimeck*, in *Harris* there was no discussion or agreement to launder the money by concealing the nature and source of the money.

---

[8] The courier was a government informant who delivered the money to the Drug Enforcement Agency.

[9] "The fund transfers were made in two main ways—1. Miller's group made cash deposits into the accounts of Harris, Harris's supplier and Harris's friend at a Bank of America branch in Dallas, Texas, which were then withdrawn by Harris or others at Bank of America locations in the Los Angeles area. 2. Miller or other members in his group wired money to Harris or to Harris's associates using MoneyGram." *Id.*, at 907.

Unlike both cases, the indictment here asserts that all three defendants "conspired and agreed"[10] to conduct financial transactions involving proceeds of an unlawful activity "knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds…" **ECF No. 12** at 1-2. Moreover, the indictment alleges that the leaders of the money laundering organizations solicited "money contracts," and that members of the organization "arranged for the illicit proceeds… to be picked up from couriers and then moved by wire transfers through U.S. financial institutions to bank accounts designated by the [money laundering organization]." *Id.*, 2-3. Once such distributions took place, "a portion of the illicit proceeds was ultimately repatriated to [d]rug [t]rafficking [o]rganizations and the owners of the illicit proceeds." *Id.*, at 3.

This "manner and means" type of allegations forecloses on defendants' ability to rely on *Dimeck* or *Harris*, since no such scheme was at issue in those cases. Evidently, unlike the two out-of-circuit cases cited by defendants, here the indictment charges defendants with participating in conduct that goes far beyond from simply delivering "the illegal proceeds as illegal funds." *Dimeck*, 24 F.3d at 1246. Instead, the indictment specifically states that defendants' conduct was "designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds…" **ECF No. 12** at 1-2.

---

[10] As discussed before, the indictment also charges defendants with substantive money laundering violations. *See* Counts Two, Three, and Four, **ECF No. 12**. In each of these counts, the government clearly charges them with concealment of the unlawful source of the proceeds.

Put differently, in this case the indictment charges defendants with conduct that transcends that of a mere courier who picks up money from the sale of drugs to deliver it to the owner. Instead, defendants are charged with "concealing" the nature and source of the money and "repatriating" it to different recipients in exchange for a "commission." **ECF No. 12** at 2-3. Thus, defendants' belated "supplemental" brief (even if accepted), **ECF No. 117**, is also unavailing inasmuch as it only included a block quote from yet another out-of-circuit case in which the Second Circuit reversed a money laundering conviction where the evidence failed to show "that the purpose of the delivery of cash… was to conceal an attribute of the funds."[11] *U.S. v. Rodríguez*, 727 Fed. Appx. 24 (2nd Cir. 2018).

## V.     Conclusion

The R&R recommends that the Court deny defendants motions to dismiss the indictment. **ECF No. 112**. An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged"—though an indictment's "count[s] may allege that the means by which the defendant committed the offense are unknown." Fed. R. Crim. P. 7(c)(1). Thus, "an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018). Moreover, "[t]he government need not recite all of its

---

[11] "However, that evidence does not prove that the purpose of the delivery of cash to the agent was to conceal an attribute of the funds; rather, it is equally consistent with the purpose of paying off a drug supplier or purchasing additional drugs, which aims do not entail the intent to conceal required by § 1956(a)(1)(B)(i)."

evidence in the indictment." *Id*. (alteration in original) (citation and internal quotation marks omitted).

When reviewing a defendant's motion to dismiss an indictment, the reviewing court "must not inquire into the sufficiency of the evidence underlying the indictment," rather, the court must consider "'whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" *Id*. (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)). In doing so, "courts take the facts alleged in the indictment as true…" and "routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (*citing Guerrier*, 669 F.3d at 4). In light of the discussion above, under a de novo review of the properly objected portions of the R&R, the Court finds that the objections are unavailing as the motions to dismiss fail to show that the indictment does not comply with Fed. R. Crim. P. 7(c)(1).

For all the reasons stated above, the Court hereby **OVERRULES** defendants' objections to the R&R at **ECF Nos. 113, 117, 122**, **ADOPTS** the R&R at **ECF No. 112,** and **DENIES** defendants' motions to dismiss the indictment at **ECF Nos. 87, 88, 105.**

**SO ORDERED**.

At San Juan, Puerto Rico, on this 17th day of April 2024.

                                                            **S/AIDA M. DELGADO-COLÓN**
                                                            **United States District Judge**